IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THERON RILEY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 21-0203-JB-B |
| ) | |
| SAMUEL BERRY, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This action is before the Court on Defendant Dr. Low's Motion for Summary Judgment (Doc. 149), Plaintiff Theron Riley Jr.'s Response (Doc. 159), and Defendant's reply (Doc. 164). A hearing was held on March 18, 2024, and the Court has reviewed the motion, supporting briefs and the various exhibits filed in support of the motion. For the reasons discussed below, Defendant's Motion for Summary Judgment (Doc. 149) is **GRANTED.**

**I.   FACTUAL BACKGROUND**

Theron Riley, Jr. ("Riley") filed the instant action against various defendants, including Dr. Elizabeth Low, alleging that his Fourteenth Amendment Due Process Rights were violated when he was injected with an antipsychotic medication against his will pursuant to a standing order issued by Dr. Low. (Doc. 76).[1] The record reveals Dr. Low is a family physician who acted as the medical director of the Escambia County Detention Center from 2018-2023. (Doc. 149 at 2).

---

[1] Plaintiff's initial Complaint was filed on January 19, 2021, and did not include Dr. Low as a Defendant. (Doc. 1). However, the Operative Complaint is Plaintiff's Third Amended Complaint (Doc. 76). All claims against all other Defendants have been settled. (Doc. 159 at n.2). Further, Plaintiff withdrew his claim against Dr. Low for an injection that occurred on January 4, 2020, leaving only a single claim against Dr. Low pursuant to § 1983 based on a Fourteenth Amendment violation with respect to an injection which occurred on November 18, 2020. (*Id.*)

When she became director, Dr. Low "inherited" standing orders, including the standing order at issue in this litigation, from the previous medical director, which she reviewed and signed. (*Id*. at 2-3).

The underlying facts establish the following:

On November 18, 2020, Riley, a pre-trial detainee at the Escambia County Detention Center, was escorted to the Escambia County Courthouse for his bond hearing. (Doc. 159 at 2). While in the hallway of the Escambia County Courthouse Riley and anther detainee were singing a rap song that contained the words, "f*** the D.A." While he was singing, a Bailiff approached him from behind and an altercation occurred. (*Id*.). Riley was taken back to the jail and placed in a one-man isolation cell. (*Id*.) Shortly thereafter, Riley was taken out of the cell and strapped into a restraint chair. (*Id*.). His placement into the restraint chair was observed by Nurse Megan Langford ("Nurse Langford"), who determined that she did not need to see Riley in her office for evaluation, due to his behavior. (*Id*.). After being restrained in the restraint chair, Nurse Langford observed Riley maneuvering the restraint chair or attempting to turn the chair over. (Doc. 149 at 4). Nurse Langford had previously observed an inmate flip a restraint chair over. (*Id*.). Ultimately, Nurse Langford determined Riley was non-compliant and a danger to himself and administered a chemical restraint to Riley pursuant to a standing order signed by Dr. Low. (*Id*.). The standing order states:

> IM injection for severely agitated/manic inmates who are unable to restrain oneself. Injection includes the following medications to be given in separate injections
>
> - 1-2mg Ativan IM injection
>
>   Mixed with
> - Halaperidol IR 5mg Im injection

- (in a separate injection by itself) Benadryl 50mg IM injection

These are to be given in one setting, may repeat Benadryl 50mg IM every 2 hours until patient is sedated.

(Doc. 159 at 4; Doc. 48-6; Doc. 149 at 4). Although the standing order specifies that an inmate be "unable" to restrain oneself, Dr. Low testified that the chemical restraint may be given when an inmate is "unwilling" to restrain themselves based on their behavior. (Doc. 159 at 6). Further, although the standing order does not so expressly state, Dr. Low testified that the standing order was permitted to be used in situations where an inmate was dangerous to himself or others. (Doc. 149-1 at 20). Similarly, according to Nurse Langford, the standing order was to be used "only when manual forms of restraint fail to adequately protect others from harm by the inmate and/or adequately protect the inmate from harming himself or herself." (Doc. 164 at 10; Doc. 48-5). Kristy Godwin, another nurse working at the jail, testified that she had been instructed to use the standing order "[a]ny time one was showing harm to themselves or others, and when they were acting erratic, unruly, or out of control." (Doc. 164-5 at 2-3).

Riley's medical records from the Escambia County Detention Center contain a hand-written note from Nurse Langford dated November 18, 2020, which states "[Inmate] noncompliant, assaulting c̄ spit and still maneuvering restraint chair. Admin standing Order of Haldol 5mg, Ativan 2mg, Benadryl 50mg [. . .]". (Doc. 159 at 3). Nurse Langford's contemporaneous typed note states as follows: "[a]t approximately 1009 on 11-18-2020, Theron Riley received standing orders for chemical restraint. Inmate had already assaulted officer by spitting, already restrained in restraint chair, and still able to maneuver himself in the chair. Inmate tolerated injections without issues. It is now 1025 and inmate is calm, cooperative and willing to comply. Chemical restraint deemed effective at this time." (*Id*. at 4).

3

There is no dispute that the standing order does not require a nurse to obtain approval prior to administering the subject medication, that Nurse Langford did not contact Dr. Low, or any other physician prior to medicating Riley, that the administration of the medication was involuntarily, or that the medication was administered as a chemical restraint. (*Id*. at 5). There is additionally no dispute that Nurse Langford considered Riley to be mentally capable of controlling his actions, she did not consider Riley to be psychotic, nor could she diagnose anyone as "manic." (*Id*. at 2-3).

Plaintiff does, however, dispute that the restraint chair could have been overturned. In that regard he testified that the chair could not be tipped over. (Doc. 159 at 16; Doc. 159-2 at 7). Plaintiff also points to the testimony of Dr. Mark Choquette, (Dr. Low's designated expert) that he has never seen a restraint chair be overturned and the odds of someone doing so would be slim. (Doc. 159 at 7). George Hardinger (former warden) additionally testified that in his two decades as warden, he had never seen or heard of an inmate overturning a restraint chair. (*Id*. at 8; Doc. 159-5 at 4). Finally, Dr. Pelmore (Plaintiff's designated expert), Dr. Low, and Nurse Wright all testified that either they had not seen an inmate overturn a restraint chair or that it was unlikely. (Doc. 159 at 18).

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some

4

evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 870 (11th Cir. June 24, 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### III.   DISCUSSION

#### A.   42 U.S.C. § 1983

Plaintiff alleges Dr. Low is liable pursuant to 42 U.S.C. § 1983, because her standing order violated his Fourteenth Amendment Due Process Rights. Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). There is no dispute that Dr. Low acted under color of state law. However, Dr. Low contends she is entitled to qualified immunity because it was not established, much less clearly established, that her standing order violated Plaintiff's

constitutional rights. (Doc. 159). Because a finding of qualified immunity is dispositive, the Court will address Dr. Low's defense first.

### B. Qualified Immunity

The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotation omitted). An official seeking qualified immunity must initially establish that he was acting within his discretionary authority. *Id*. If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that immunity is not appropriate. *Id*.

To meet this burden, a plaintiff must first show that a defendant's conduct violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Second, a plaintiff must show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "For an asserted right to be clearly established for purposes of qualified immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that

"what he is doing" violates federal law.'" *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000)(citations omitted).

There are three avenues by which Plaintiff can meet his burden to show that the officers violated clearly established constitutional law. "First, the plaintiffs may show that a 'materially similar case has already been decided.' … Second, the plaintiffs can point to a 'broader, clearly established principle [that] should control the novel facts [of the situation].' … Finally, the conduct involved in the case may 'so obviously violate[] th[e] constitution that prior case law is unnecessary.'" *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (internal citations omitted). When determining whether a right was clearly established, the Court "looks only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)(citation omitted).

Plaintiff does not appear to contest that Dr. Low was acting within the scope of her discretionary duties. Nevertheless, "a government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988). The Court is satisfied that Dr. Low was clearly acting in her discretionary authority. As a result, the Court will determine whether Plaintiff has sufficiently shown that Dr. Low's standing order violated Plaintiff's clearly established substantive and procedural due process rights.

### 1. Due Process

Plaintiff contends Dr. Low's standing Order violates his substantive and procedural due process rights as established by *Washington v. Harper*, 494 U.S. 210 (1990). (Doc. 76; Doc. 159 at 9). More specifically, according to Plaintiff, *Harper* established that in order to satisfy substantive due process, factual circumstances must establish that (1) an inmate has a serious mental illness, (2) he is a danger to himself or others, and (3) the involuntary administration is in the inmate's medical interest. (*Id*. at 9-19).[2] With respect to procedural due process rights, Plaintiff asserts that the standing order violates his rights because it does not require that the decision to inject a detainee be "based upon a doctor's 'professional judgment.'" (Doc. 159 at 19-21). Defendant contends *Harper's* due process requirements do not apply in emergent situations, such as this one, where an inmate/detainee is a danger to himself or others. (Doc. 149 and 164, generally).[3]

The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without the due process of law." U.S. Const. amend. XIV. Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Washington v. Harper*, 494 U.S. 210, 221–22, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990) (discussing the Fourteenth Amendment as it applies to convicted prisoners); *see also Riggins v. Nevada*, 504 U.S. 127, 135,

---

[2] Plaintiff asserts that Dr. Low's Motion for Summary Judgment addresses only one of the three prongs set forth in *Harper* and, therefore, concedes a question of fact exists as to the other two elements. (Doc. 159 at 10). However, as the Court understands Dr. Low's position, summary dismissal is warranted because *Harper's* analysis does not apply. More specifically, Dr. Low contends the injection of medication in this instance did not violate Plaintiff's rights because the standing order applied only when the facts demonstrated that an inmate was a "danger to himself or others."

[3] Defendant also argues that a § 1983 action alleging forcible medication with antipsychotics should be treated as an Eighth Amendment deliberate indifference claim. (Doc. 149 at 8-9; Doc. 164 at 13-14). However, the Court agrees with Plaintiff that the issues here should be addressed as a Fourteenth Amendment due process claims and, therefore, does not separately analyze the deliberate indifference standard.

112 S.Ct. 1810, 1815, 118 L.Ed.2d 479 (1992) (providing that pretrial detainees have an interest under the Fourteenth Amendment in avoiding forced antipsychotic medication). While the right to refuse psychotropic drugs in a correctional setting is not absolute, "involuntary-medication orders must meet minimum standards of substantive and procedural due process." *Dunn v. Dunn*, 219 F.Supp.3d 1100, 1153, (M.D. Ala. November 25, 2016). "[T]he substantive issue involves a definition of th[e] protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it. The procedural issue concerns the minimum procedures required by the Constitution for determining that the individual's liberty interest actually is outweighed in a particular instance." *Harper*, 494 U.S. at 220 quoting *Mills v. Rogers*, 457 U.S. 291, 299, 102 S.Ct. 2442, 2448, 73 L.Ed.2d 16 (1982) (citations omitted).

### a.    The Standing Order did not Violate Plaintiff's Clearly Established Substantive Due Process Rights

According to Plaintiff, to satisfy substantive due process, factual circumstances must establish that (1) an inmate has a serious mental illness, (2) he is a danger to himself or others, and (3) the involuntary administration is in the inmate's medical interest. (*Id*. at 9-19). In essence, Plaintiff's position is that *Harper* establishes the constitutional minimum for the administration of antipsychotic medication and because Dr. Low's standing order fails to comply with the substantive or procedural standards enunciated in *Harper*, it is unconstitutional. This Court is not persuaded by Plaintiff's position.

In *Harper,* the Supreme Court considered whether a policy permitting the long-term involuntary administration of antipsychotic medication to treat mental illness violated the Due Process Clause. But *Harper* did not, as Plaintiff argues, hold that the standards of the subject policy were the minimum federal due process requirements for involuntary medication. Instead,

the Supreme Court held that the subject policy did not violate federal constitutional requirements. *See Harper*, 494 U.S. at 222, 110 S.Ct. at 1036–37; *Leeks v. Cunningham*, 997 F.2d 1330, 1333 (11th Cir. 1993) *cert. denied*, 510 U.S. 1014, 114 S.Ct. 609, 126 L.Ed.2d 573 (1993). ("Although the Court held that Harper had a protectible liberty interest, the Court nonetheless concluded that the State's policy as to administering unwanted antipsychotic medication comported with due process requirements as it was reasonably related to the State's legitimate interest in preventing harm to the inmate and others and was in the inmate's medical interest.")

Further, in *Harper,* the Court recognized the requirements of the prison setting and held prison officials are permitted to forcibly treat a mentally ill pretrial detainee with antipsychotic medication "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227, 110 S.Ct. at 1039–40; *see also Riggins*, 504 U.S. at 135, 112 S.Ct. at 1815.  As such, post-*Harper*, it remains that "under appropriate factual circumstances, the government at times may force an individual to take psychiatric medications against his will." *Grider v. Cook*, 590 F. App'x 876, 882 (11th Cir. 2014) citing *Harper*, 494 U.S. at 227.  Indeed, following *Harper*, courts have determined that no substantive due process violation occurred when the issue was not the long-term use of antipsychotics, but the one-time use of medication in emergent or dangerous situations. *See, e.g. Spaulding v. Poiter*, 548 Fed. Appx. 587, 591 (11th Cir. 2013) (Plaintiff's liberty interests were not violated by the administration of a single dose of antipsychotic medication because he was a danger to himself and others.); *Webb v. Streeter*, 2022 WL 3587363, *8 (D. Neb. August 22, 2022) (finding no procedural or substantive due process violation when inmate was involuntarily medicated after becoming aggressive with staff and applicable policies were followed).

11

As an initial matter, the parties both make arguments as to the constitutionality of the standing order based on whether the facts show Plaintiff was a danger to himself or others. More specifically, whether the facts establish Plaintiff could succeed in flipping over the restraint chair. However, the issue before this Court is not whether Nurse Langford's actions were unconstitutional in her administration of the medication, it is whether the standing order implemented by Dr. Low was unconstitutional. In that regard, although Plaintiff points out that the standing order doesn't expressly qualify its intended use, Plaintiff has presented no evidence to refute that the standing order permitted the administration of a single dose of antipsychotic medication in situations where an individual was a danger to himself or others per the testimony of Dr. Low, Nurse Langford, and Nurse Godwin. Because the policy limits the administration of a single dose of medication when an inmate poses a danger, a manner that considers both the inmate's medical interests and the legitimate needs of the prison, it does not violate substantive due process. *Harper*, 494 U.S at 227.

Nevertheless, the Court is additionally satisfied that Plaintiff posed a danger to himself. It is undisputed that Plaintiff was involved in an altercation leading to his placement in an isolation cell and then a restraint chair. It is additionally undisputed that once restrained, Plaintiff did not calm down but attempted to maneuver the restraint chair with some success. Even considering Plaintiff's testimony that the restraint chair could not be flipped over or the testimony that the probability the overturning the chair was slim, there is no dispute that Plaintiff was attempting to maneuver the chair and that Nurse Langford had previously witnessed an inmate overturn a restrain chair. Thus, a dispute over the probability of overturning the restraint chair does not defeat that a danger existed. Finally, there is no dispute that if Plaintiff overturned the restraint

chair, he would be defenseless to a fall which could result in serious injuries.  As a result, the facts demonstrate that Plaintiff was a danger to himself and therefore, the administration of a single dose of anti-psychotic medication by Nurse Langford pursuant to the standing order did not violate his substantive due process rights.  *See Spaulding*, 548 Fed. Appx. at 590 ("[P]rison officials are constitutionally permitted to forcibly treat an inmate with antipsychotic medication when that inmate is a danger to himself or others.) (citation omitted).

Assuming, however, that the standing order violated Plaintiff's substantive due process rights, Dr. Low is still entitled to qualified immunity because Plaintiff has not shown that his substantive due process right was clearly established by binding precedent.  As set forth above, "[f]or an asserted right to be clearly established for purposes of qualified immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.'" *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000)(citations omitted).  The only case relied on by Plaintiff to support that his right was clearly established is *Harper*, but as set forth above, *Harper* is materially distinguishable.  Namely, *Harper* considered the implications of due process on a policy relating to the administration of long-term antipsychotics for mentally ill prisoners, not the one-time use of antipsychotics for dangerous behavior.  Accordingly, the Court is not persuaded that *Harper* made it "obvious to all reasonable government actors", in Dr. Low's position, that her standing order violated federal law.  *See Jackson,* 206 F.3d at 1164-65.  Moreover, Plaintiff has not pointed to any case since *Harper* with facts similar to this one clearly establishing Dr. Low's standing order violated his substantive due process rights.   Accordingly, Dr. Low is entitled to qualified immunity.

### b. The Standing Order did not Violate Plaintiff's Clearly Established Procedural Due Process Rights

Plaintiff additionally argues that the standing order violates Plaintiff's procedural due process rights because it does not require that the decision to inject a detainee be "based upon a doctor's 'professional judgment'" pursuant to *Harper*. (Doc. 159 at 19-21). Procedural due process involves ascertaining "whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Harper*, 494 U.S. at 220, 110 S.Ct. at 1035. But again, as discussed herein above, *Harper* addressed long-term treatment of mentally ill prisoners, not the administration of involuntary medication when an inmate poses a danger to himself or others. As such, *Harper* did not establish the constitutional minimum for procedural due process in emergent or dangerous situations. *See, e.g. Hogan v. Carter*, 85 F.3d 1113, 1116-17 (4th Cir. 1996) (granting qualified immunity to doctor who administered single dose of antipsychotic medication to an inmate in danger of injuring himself after understanding *Harper* to have "addressed to the circumstance of long-term treatment there at issue, and not as extending to emergencies."); *see also Webb*, 2022 WL 3587363 at *8 (Following *Harper*, "it has become widely accepted that 'the decision to administer antipsychotic medication over an inmate's objection comports with due process if the decision was made in the exercise of professional medical judgment and arose in the context of an emergency situation where the inmate posed a danger to himself or others.'") (citations omitted); *Pinkston v. Mississippi Dep't of Corr.*, 2021 WL 1206412, at *11 (N.D. Miss. Mar. 30, 2021) ("Ordinarily, the failure to provide the required procedural protections before forcible administration of a drug will result in a violation of a plaintiff's procedural due process rights. However, a prisoner is not entitled to such procedural protections when the circumstances suggest that he poses 'such an imminent and serious danger

14

to himself or others' that the defendant could not comply with the notice and hearing requirements."). As a result, the failure of the subject standing order to comply with the procedural standards set forth in *Harper,* does not establish that the order violated Plaintiff's procedural due process rights.[4]

Moreover, even if the order violated procedural due process, Dr. Low is entitled to qualified immunity because the same has not been clearly established. Again, Plaintiff relies solely on *Harper* to show that the standing order clearly violated procedural due process. But *Harper* is materially distinguishable from the facts of this case for numerous reasons set forth above. *Harper*, then, did not make it "obvious to all reasonable government actors", in Dr. Low's position, that her standing order violated federal law. *See Jackson,* 206 F.3d at 1164-65. Because Plaintiff has not pointed to materially similar binding case that established his procedural due process rights were violated, Dr. Low is entitled to qualified immunity.

## IV. CONCLUSION

For the reasons discussed below, the Defendant's Motion for Summary Judgment (Doc. 149) is **GRANTED.**[5]

**DONE and ORDERED** this 27th day of September, 2024.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Defendant additionally argues that the standing order satisfies the procedural due process requirements because it permits a nurse, present with an inmate, to exercise professional judgment. However, the Court need not address whether Plaintiff's procedural due process rights were met by some standard other than those set forth in *Harper*, because even if Plaintiff's due process right were violated, the same was not clearly established by binding precedent.
[5] Because summary judgment is granted on the only remaining claim in this action, Defendant's Motion to Exclude (Doc. 150) is **MOOT**.